1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   NELSON CAMPBELL, ET AL.,                    Case No. 1:20-cv-00901-CDB

12                  Plaintiffs,                   **ORDER ON PARTIES' STIPULATION
                                                 FOR APPROVAL OF PAGA
13          v.                                   SETTLEMENT**

14   FMC TECHNOLOGIES SURFACE                    (ECF No. 29)
     INTEGRATED SVCS, ET AL.,
15
                    Defendants.
16

17

18          Before the Court is the parties' Stipulation for Order Approving Private Attorneys General

19   Act (PAGA) Settlement, filed on September 27, 2022. (ECF No. 29). On the same day, Plaintiffs'

20   Attorney Karl Gerber filed a Declaration in support of the stipulated Order Approving PAGA

21   Settlement. (ECF No. 30). Having considered the stipulated motion and the supporting

22   documentation, for the reasons set forth below, the Court approves the settlement agreement.

23                                       **BACKGROUND**

24          On June 29, 2020, Plaintiffs filed a complaint against Defendant, FMC Technologies

25   Integrated SVCS (FMC). (ECF No. 1). Under the operative Second Amended Complaint (ECF

26   No. 23), filed August 30, 2021, Plaintiffs Nelson Campbell and Mark Valles raised Private

27   Attorney General Act (PAGA) allegations against FMC under California Labor Code Section

28   2699, *et seq.* Plaintiffs (former employees of Defendant) alleged that Defendant failed to pay

1  them standard and overtime wages while they were on a restricted on-call/standby status and

2  failed to pay them wages for every time they answered their work phone when on-call.

3      According to the parties' representations in the pending stipulation, on May 2, 2022, this

4  case was mediated by retired San Diego Superior Court judge Steven Denton. On July 1, 2022,

5  the parties agreed to all terms in connection with a PAGA settlement of this case, and they

6  executed an agreement on July 8, 2022. (ECF No. 29, p. 2 & Exhibit 1 (the Agreement)). The

7  parties request Court approval of their settlement because under Cal. Lab. Code §2699(1)

8  proposed PAGA settlements require court approval.

9                          **THE PROPOSED SETTLEMENT**

10     The underlying PAGA claims to be released include : (1) failure to pay for all hours

11  worked, (2) failure to pay for controlled standby time, (3) failure to pay reporting time pay, (4)

12  failure to pay minimum, overtime and double time wages, (5) failure to properly calculate the

13  regular rate of pay, (6) failure to provide meal and rest breaks, (7) failure to pay meal and rest

14  break premiums at the correct regular rate of pay, (8) failure to reimburse for business expenses,

15  (9) failure to provide complete and accurate wage statements, (10) failure to timely pay all wages

16  owed to employees who quit or are terminated, and (11) failure to maintain required payroll-

17  related records. Cal. Lab. Code §§ 201 *et seq*. (Agreement ⁋ 15).

18     According to the Agreement, Defendant will pay a sum of $75,000.00 (Agreement ⁋ 10)

19  The Net Settlement amount is the amount remaining to distribute to the California Labor

20  Workforce Development Agency (LWDA) and the PAGA aggrieved employees, after Plaintiff's

21  attorney fees up to $25,000, litigation costs of up to $4,000, and administration costs of up to

22  $2,000 are paid.  (*Id*. at ⁋ 11). The PAGA aggrieved employees consist of all nonexempt

23  assemblers and technicians employed by FMC from July 16, 2019, until the date of this Order.

24                              **LEGAL STANDARD**

25     The Private Attorneys General Act, Cal. Lab. Code §§ 2699 *et seq.*, was enacted after the

26  California Legislature declared that: (i) adequate financing of labor law enforcement was

27  necessary to achieve maximum compliance; (ii) staffing levels for state labor law enforcement

28  agencies have declined and were unable to keep up with a growing labor market; (iii) vigorous

1    assessment and collection of civil penalties provides a meaningful deterrent to unlawful conduct;

2    and (iv) it was therefore in the public interest to allow aggrieved employees, acting as private

3    attorneys general, to seek and recover civil penalties for Labor code violations. *Chamberlain v.*

4    *Baker Hughes, a G.E Company, LLC*, Case No. 1:19-cv-00831-DAD-JLT, 2020 WL 4350207, at

5    *3 (E.D. Cal. July 29, 2020) (citations omitted).

6        PAGA allows an aggrieved employee to bring an action for civil penalties for labor code

7    violations on behalf of themselves and other current or former employees. Cal Lab. Code §

8    2699(a). A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law

9    enforcement agencies." *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009). A judgment in a

10   PAGA action "binds all those, including nonparty aggrieved employees, who would be bound by

11   a judgment in an action brought by the government." *Id.*

12       PAGA imposes certain limits on litigants. First, because a PAGA action is a "substitute"

13   for an action brought by the state government, a plaintiff suing under PAGA is limited to civil

14   penalties only, rather than damages available privately through direct or class action claims. *Id.*

15   Second, under PAGA, the aggrieved employee must first provide written notice to the LWDA as

16   well as to the employer. Cal. Lab. Code § 2699.3(a)(1). Third, any civil penalties recovered must

17   be distributed s follows: 75 percent to the LWDA, and the remaining 25 percent to the aggrieved

18   employees. *Id.* § 2699(i).

19       Finally, any settlement of PAGA claims must be reviewed and approved by a trial court.

20   *Id.* §2699(l)(2). The legal authority identifying the proper standard of review of PAGA

21   settlements to by employed by the court is still nascent. *Moniz v. Adecco USA, Inc.*, 72

22   Cal.App.5th 56, 75 (2021) ("PAGA itself does not provide a standard for this review and

23   approval") In the Ninth Circuit, courts have approved of PAGA settlements when (1) they meet

24   the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and

25   adequate in view of PAGA's public policy goals. *Chamberlain*, 2020 WL 4350207, at *4 (cited

26   favorably by *Moniz*, 72 Cal.App.5th at 75-76).

27   / / /

28

3

**DISCUSSION**

**A.      The PAGA Settlement**

According to Attorney Gerber, the potential state labor code sections that could have led to PAGA liability due to the nonpayment of wages were Cal. Lab Code §§ 204, 210, 215, and 216.  (Declaration ⁋ 11). Attorney Gerber attests that those code violations could have led to a maximum of $1,600 in PAGA penalties per employee, per pay period. However, Attorney Gerber represents that Cal. Lab. Code Section 2699(e)(2) permits the court to enter penalties for less than the maximum penalty allowed.  He represents that the amount of penalties to be paid varies based on a variety of factors outside of his control, including interpretations by the presiding judge.

Attorney Gerber represents that Plaintiffs had a strong case on two issues. First, the PAGA group had neither timecards nor time punches, nor were there start and stop signs displayed to indicate when employees started or ended work. *Id*.  ⁋ 20.  Second, Attorney Gerber was confident on the issue of meal breaks because there allegedly was no documentation that meal breaks were taken, which would generate a presumption that the meal breaks were not taken. *Id*.

As for the penalties themselves, Attorney Gerber represents that the case had some inherent uncertainty as to whether a jury would consider Defendant's behavior reprehensible (which presumably were inure to the Plaintiffs' benefit) or, the alternative, that Defendant merely oversaw a poorly thought-out system of payments due to the lack of record keeping. *Id*. ⁋ 22.

Attorney Gerber attests that based on his experience, a $75,000 PAGA settlement in a case involving a group of 15 people and 620 pay periods (*e.g.*, roughly $120.97 per pay period) is favorable as compared to other PAGA cases.  *Id*.  Attorney Gerber also based his assessment of the proposed settlement's favorability on other benefits gained through avoiding trial, including additional expenditure of attorney fees, the cost of hiring an expert witness, and the inconvenience to Plaintiffs of appearing for trial.

Attorney Gerber's declaration demonstrates that he is experienced with litigating PAGA claims and has a suitably informed sense of viable settlement amounts.  He declared that he never has submitted a PAGA settlement that was rejected by the Court. Some examples of PAGA non-

4

1   class settlements for which Attorney Gerber has been lead counsel in the Eastern District of

2   California include *Chamberlain v. Baker Hughes*, No. 1:19-cv-00831-DAD-JLT, and *Messic v.*

3   *TechipFMC*, *U.S. Holdings LLC*, No: 1-17-cv-00608-LJO-JLT.  The undersigned has reviewed

4   the filings in these two cases and finds Attorney Gerber's representation is consistent with his

5   claimed experience and skill in resolving PAGA cases.

6       With this understanding, the Court will approve the Agreement as it pertains to the award

7   of PAGA penalties. Counsel has adequately described his experience with pursuing settlements,

8   the difficulties related to the nature of this case, and the risks associated with increased costs of

9   litigation. Attorney Gerber's declaration elaborates on the risk analysis he undertook concerning

10  the possibilities of failing to prevail at trial or receiving a reduced award. Counsel's consideration

11  of all these factors as well as the examples of settlement amounts that he managed to secure in

12  similar cases reflect the fairness and reasonableness of the Agreement.

13  **B.      Attorney's Fees**

14      The relevant PAGA provision pertaining to attorney's fees states: "Any employee who

15  prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Cal.

16  Lab. Code § 2699(g). Calculating fees under this provision requires application of the lodestar

17  method. *Chamberlain*, 2020 WL 4350207, at *5; *see PLCM Grp. v. Drexler*, 22 Cal 4th 1084,

18  1095 (2000) (noting that the fee inquiry in California begins with the "lodestar"). "In determining

19  reasonable hours, counsel bears the burden of submitting detailed time records justifying the

20  hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210

21  (9th Cir. 1986). "Where the documentation of hours is inadequate, the district court may reduce

22  the award accordingly."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Likewise, the court

23  should exclude from the lodestar fee calculation any hours that are not "reasonably expended,"

24  like excessive, redundant, or otherwise unnecessary hours. *Id.* at 434.

25      In considering fee applications, the reasonable hourly rates are calculated according to

26  prevailing market rates in the relevant legal community. *Blum v. Stenson*, 465 U.S. 886, 895

27  (1984). The fee applicant bears the burden of producing satisfactory evidence "that the requested

28  rates are in line with those prevailing in the community for similar services by lawyers of

reasonably comparable skill, experience and reputation." *Id.* at 896 n.11. "Affidavits of the plaintiffs' attorney and other attorneys regarding the prevailing fees in the community, and rate determinations in other cases, particularly setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

The Agreement provides that up to $25,000 may be subtracted as attorney fees from the total amount of $75,000 by Court approval. (Agreement ¶ 11). Attorney Gerber submitted in support of the Agreement billing statements from his firm, Campbell & Valles, which totaled 101.7 hours for Attorney Guleser. (Declaration, Exhibit 6). Attorney Gerber attests that he spent more than 100 hours on the case but fails to offer any billing records – contemporaneous or otherwise – supporting his claim. (*Id.* ¶ 28). Thus, for the approximately 201.7 hours of attorney time spent on the case, the proposed fee amount of $25,000 would yield an attorney billing rate of $123.95 per hour.

The party seeking attorney's fees bears the burden of producing documentary evidence demonstrating the number of hours spend on and rates on the litigation. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). Ordinarily, "parties are subject to a reduction in the hours awarded when they fail to provide adequate documentation, notably contemporaneous time records." *Chamberlain*, 2020 WL 4350207, at *7 (quotation and citation omitted). It is particularly frustrating to the undersigned that Attorney Gerber has been admonished by the Court in another PAGA settlement case for his failure to submit to the court contemporaneous billing records in support of a request for attorney's fees. *Id.* Instead of following this Court's earlier direction in *Chamberlain*, Attorney Gerber submitted in support of the instant request for attorney's fees a Laffey Matrix for members of the D.C. Bar in the Washington, D.C. area. That information is of little to no value to the Court for purposes of the lodestar calculation.

Still, Attorney Gerber attest that he has received fees between $600 and $1,000 per hour for awards in previous PAGA settlement cases, indicating that the effective billable rate here is reasonable. The proposed $25,000 attorney fee figure represents 33 percent of the gross settlement payment. Furthermore, in *Chamberlain*, the Court approved an hourly rate award of

$90.90 for Attorney Gerber.  The court in *Chamberlain* further noted that appropriate rates in this community in the years of 2015 and 2016 ranged from $275 to $400 dollars for attorneys with 20 or more years of experience. *See e.g.*, *In re Taco Bell Wage & Hour Actions*, 222 F. Supp.3d 813, 839 (E.D. Cal. 2016) (concluding that $350 to $400 per hour for attorneys with twenty or more years of experience was appropriate); *Sanchez v. Frito-Lay*, No. 1:14-cv-00797-AWI, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015), report and recommendation adopted, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015) (awarding rates of $275 to $350 for attorneys experiences ranging between 14 and 20 years of experience).

Accordingly, because the proposed $25,000 attorney's fee award is consistent with a rate of $123.95 per hour figure and significantly below the lodestar, the Court will approve the $25,000 in fees as requested.

**C.     Costs**

Attorney Gerber attests to the litigation costs incurred to date in this action. Attached to the Declaration is a billing statement of Litigation Costs Advanced (through September 6, 2022), totaling costs in the amount$8,744.30.  (Declaration, Exhibit 8.  The itemized costs incurred include costs and fees associated with mediation, depositions, photocopies, postage, litigation filing, telephone calls and transportation.  Attorney Gerber also submits a statement from Phoenix Settlement Administrators involving administrative tasks costing no more than $1,514.23.  (*Id.*, Exhibit 9).  Upon review of the figures set forth in the Declaration, the Court approves the stipulated amount for $4,000 in the Agreement for costs incurred as well as the requested amount of $1,514.23 in claim administrator costs as reasonable.

**CONCLUSION AND ORDER**

Based on the parties' stipulation and for the reasons set forth above,

1.  The PAGA settlement agreement (ECF No. 29, Exhibit 1) is APPROVED, and plaintiffs' counsel shall receive $25,000.00 in attorneys' fees and a reimbursement of up to $4,000.00 for litigation costs;

2.  The parties are DIRECTED to effectuate all terms of the PAGA settlement agreement (ECF. No. 29, Exhibit 1) and any deadlines or procedures for distribution therein;

7

3.  Within 30 days of the date of service of this Order, the parties are ORDERED to file a stipulation to dismiss this action or a Joint Report setting forth why a final accounting by the claims administrator has not been accomplished and when the parties intend to file a stipulated dismissal; and

4.  All pending dates, conferences and hearings are VACATED.

**The parties are advised that failure to comply with this order may result in the Court imposing sanctions, including dismissal of the action**.

IT IS SO ORDERED.

Dated:   **December 9, 2022**

UNITED STATES MAGISTRATE JUDGE